# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICKIE SLAUGHTER, JR., | Case No.: 2:17-cv-01728-APG-NJK |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment** |
| v. | |
| JEREMY BEAN, et al., | [ECF Nos. 16, 28] |
| Defendants | |

Plaintiff Rickie Slaughter sues Nevada Department of Corrections (NDOC) officers Jeremy Bean, Manuel Portillo, Bruce Stroud, and David Tristan under 42 U.S.C. § 1983 for violations of his constitutional rights while he was an inmate at High Desert State Prison. I previously screened Slaughter's complaint under 28 U.S.C. § 1915A and allowed him to proceed with one due process claim for denying Slaughter's right to call witnesses in a disciplinary hearing. ECF No. 4. Bean, Portillo, and Tristan[1] (collectively, the defendants) filed a motion for summary judgment on that claim, and Slaughter filed a motion for summary judgment. ECF Nos. 16; 28. Because it was not clearly established that Bean could not deny Slaughter's requested witnesses for the reasons he provided, I grant the defendants' motion for summary judgment and deny Slaughter's motion for summary judgment.

## I. BACKGROUND

Slaughter is a former inmate at High Desert State Prison. On June 26, 2014, sixteen inmates fought on the prison yard basketball court. ECF Nos. 16-1 at 2; 16-7 at ¶ 4. To stop the fight, NDOC staff fired non-lethal pellet shots and a blank round. ECF No. 16-1 at 2. NDOC

---

[1] The defendants state that Bruce Stroud is deceased. ECF No. 7. Because 90 days have passed since the defendants served notice of Stroud's death and no party has moved to substitute a proper party, I dismiss all claims against Stroud. Fed. R. Civ. P. 25(a)(1).

staff identified Slaughter as one of the fighting inmates. *Id.*; ECF No. 18-1 at 19. Slaughter was injured by the pellet shots and transported to University Medical Center. ECF No. 18-1 at 14, 41.

NDOC staff charged Slaughter with several violations for his role in the fight. ECF No. 16-1 at 2. At a preliminary hearing conducted by defendant Portillo on June 21, 2014, Slaughter pleaded not guilty and requested several witnesses. *Id.* at 3. The record of the preliminary hearing notes that Slaughter requested as witnesses his cellmate Aaron Hendrix and the inmates in cell 6-A-7, who Slaughter observed laying next to him on the basketball court in the prison yard. *Id.* The inmates in cell 6-A-7 were later identified as Joshua Croft and Davis Anderson. *Id.* at 4. Slaughter states that he also requested all inmates named in the notice of charges. ECF No. 27 at 15. He handwrote this request next to his signature on the preliminary hearing record. ECF No. 16-2 at 10. Portillo accepted Croft and Anderson as relevant witnesses. ECF No. 16-1 at 4.

Defendant Bean conducted Slaughter's disciplinary hearing on June 24, 2014. *Id.* at 5. Prior to the hearing, Bean reviewed all NDOC staff reports and the physical evidence. ECF No. 16-7 at ¶¶ 6-7. Bean denied Slaughter's request to call the inmates named in the notice of charges, explaining on the record that they were also charged with the same violations and would be reluctant to incriminate themselves. ECF No. 16-3 (recording of disciplinary hearing). In his declaration, Bean adds that he denied Slaughter's request because: (1) the witnesses were unnecessary given the weight of the evidence he reviewed; (2) calling the other inmates charged with the same violation would unreasonably taint the process and distract from making a fair and impartial decision; (3) calling fifteen other inmates would delay swift punishment; and (4) calling the other inmates could endanger institutional security because the inmates all faced the same violent charges. ECF No. 6-7 at ¶ 7. Bean denied Slaughter's request to call Hendrix, explaining on the record that because they had been cellmates for two weeks, there was a

2

possibility of coercion. ECF No. 16-3.  In his declaration, Bean added that Hendrix was redundant and irrelevant. ECF No. 6-7 at ¶ 8.  Bean also noted that Hendrix was redundant in the written hearing record. ECF No. 16-1 at 5.

Prior to the hearing, Bean interviewed Croft, Anderson, and correctional officer Franco, who Slaughter also requested as a witness. *Id.* at ¶ 8.  Bean read a summary of their testimony to Slaughter, who responded with questions and rebuttal. ECF No. 16-3.  Bean denied Slaughter's request to question these witnesses. *Id.*  Bean then found Slaughter guilty on the charges and sanctioned him to 540 days in disciplinary segregation, forfeit of 180 days of statutory credits, and restitution for his medical care. ECF No. 16-2 at 7.  Slaughter filed first- and second-level grievances, which were denied by Stroud and Tristan, respectively. ECF No. 16-4.

## II. DISCUSSION

The defendants argue that summary judgment is appropriate because no due process violation occurred, the defendants are entitled to qualified immunity, certain defendants did not personally participate in the alleged violation, and any violation was harmless. ECF No. 16. They also object that Slaughter's motion for summary judgment is untimely. ECF No. 31. Because Slaughter has not established a triable issue of fact as to whether the defendants are entitled to qualified immunity, I address only that issue.

### A. Summary Judgment Standard

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### B. Qualified Immunity

The defendants argue that they are entitled to qualified immunity because there was no conclusive authority putting Bean on notice that denying Slaughter's witnesses for the reasons provided would violate due process. ECF No. 16 at 14-15. Slaughter responds that the defendants violated his right not to have witness requests categorically denied. ECF No. 27 at 11.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling on a qualified immunity defense, I consider whether the evidence, viewed in the light most favorable to the plaintiff, shows the defendants' conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). If so, I then determine whether the right was clearly established. *Id.* I may perform this two-step inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

4

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted). I must "define the clearly established right at issue on the basis of the specific context of the case." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quotations omitted). A plaintiff "bears the burden of showing that the right at issue was clearly established." *Id.* (quoting *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011)). The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

When an inmate in state custody faces a disciplinary proceeding that may result in the loss of good-time credits or similar infringements on the inmate's liberty interest, procedural due process requires that the inmate receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Inmates do not have the right to call unnecessary or irrelevant witnesses. *Id.*

"When prison officials limit an inmate's efforts to defend himself [or herself], they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). However, prison officials must make individualized determinations to limit the calling of witnesses and may not impose categorical restrictions on the calling of witnesses. *Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir. 1982).

The United States Constitution does not require confrontation or cross-examination of witnesses at a disciplinary hearing. *Wolff*, 418 U.S. at 568-569. Although the Ninth Circuit has not addressed the issue, the Second Circuit has held that "[i]t is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citing *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989)); *see also Knight v. Matevousian*, No. 1:15-CV-00340-AWI-EPG-HC, 2016 WL 4417710, at *3 (E.D. Cal. Aug. 18, 2016) (finding no Ninth Circuit case on point and citing *Francis*).

Assuming that constitutional violations occurred, the law was not clearly established that they constituted due process violations. Bean could have reasonably believed that his reasons for denying Slaughter's requests to call Hendrix and the fifteen other inmates named in the notice of charges were legitimate penological justifications. Bean's concern that Hendrix's testimony would create an unacceptable risk of coercion is supported by *Wolff's* recognition that prison officials may deny witness requests if they create a risk of reprisals. Bean viewed the other inmates as unnecessary in light of the other evidence and Slaughter's three other witnesses.

Bean also recognized that calling fifteen other inmates would prevent "swift discipline" in Slaughter's case and in the cases of the other fifteen inmates. With regard to the witnesses Bean did accept, the law is not clearly established that it is a violation of due process to take the testimony of a witness outside the presence of an inmate because there is no Ninth Circuit case on point, and the Second Circuit has held that the practice is not a violation of due process.

Slaughter points to several cases where prison officials denied witness requests on the basis of categorical rules rather than individualized determinations. *See Bartholomew*, 665 F.2d at 918; *Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998); *Campbell v. Brown*, No. 3:09-CV-00290-LRH, 2013 WL 1333760, at *1 (D. Nev. Feb. 4, 2013), *report and recommendation adopted*, No. 3:11-CV-00290-LRH, 2013 WL 1334248 (D. Nev. Mar. 29, 2013). Although Bean's decision to deny the other inmates named in the notice of charges affected fifteen potential witnesses, it was not categorical. *Cf. Bartholomew*, 665 F.2d at 918 (prison rules restricting calling of witnesses violated due process). Prior to making that decision, Bean reviewed the evidence in the case and took the testimony of three witnesses requested by Slaughter. And Bean provided reasons for his decisions during the hearing and in his declaration.

Slaughter also cites to my decision in *Howard v. Connett*. But in that case the defendants denied the plaintiff's request to call the correctional officer who prepared the notice of charges against him and no other officer with personal involvement in the case testified, "thus rendering his testimony fundamental to the disciplinary proceedings." No. 2:11-cv-01402-APG, 2014 WL 587400, at *1 (D. Nev. Feb. 14, 2014). That is a different factual and procedural posture than this case. Slaughter thus fails to raise a genuine issue of material fact as to whether the

defendants are entitled to qualified immunity.[2]  So I grant the defendants' motion for summary judgment and deny Slaughter's motion for summary judgment.  I need not and do not address the defendants' other arguments for summary judgment.

### III.     CONCLUSION

I THEREFORE ORDER that all claims against Bruce Stroud are DISMISSED under Federal Rule of Civil Procedure 25(a)(1).

I FURTHER ORDER that Jeremy Bean, Manuel Portillo, and David Tristan's motion for summary judgment **[ECF No. 16] is GRANTED** and Rickie Slaughter's motion for summary judgment **[ECF No. 28] is DENIED**.  I grant summary judgment in favor of Jeremy Bean, Manuel Portillo, and David Tristan and against Slaughter on all claims.  The clerk of court is directed to enter judgment accordingly and close this case.

DATED this 11th day of February, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[2] I assume without deciding that defendants Portillo and Tristan personally participated in the alleged due process violations.